UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF MICHIGAN

ERIC BROWN;
ROY THORNE;
S.T. a Minor through his
Next Friend ROY THORNE.

Case No.:

Hon.

    *Plaintiffs,*

v.

CITY OF WYOMING;
CHIEF KIMBERLY KOSTER;
OFFICER LOGAN WIEBER;
OFFICER LEE ATKINSON;
OFFICER DEVIN QUINTARD;
OFFICER ARROW KOTARAK;
OFFICER ZACHERY JOHNSON;
SERGEANT BRIAN LOOK.

    *Defendants*.

_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COME Plaintiffs, Eric Brown, Roy Thorne, and S.T., a minor, by and through their counsel, JOHNSON LAW PLC, complaining of Defendants, and respectfully allege as follows:

1

## JURISDICTION AND VENUE

1. This is a civil rights action in which the Plaintiffs seeks relief for the violation of rights secured by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments, and Michigan state law, MCL § 600.2922.

2. Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

3. The events that give rise to this lawsuit took place in Wyoming, Michigan, which is in the Western District of the State of Michigan.

4. Venue is appropriate in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b) because the City of Wyoming is in the Western District of Michigan, the individual Defendants are officials and employees of the Wyoming Police Department, and the events that give rise to the lawsuit took place in Wyoming, Michigan.

## PARTIES

5. Plaintiff Eric Brown ("Mr. Brown"), is a citizen of the United States and a resident of the State of Michigan. Mr. Brown is a realtor and at all penitent times was working for Keller Williams.

6. Plaintiff Roy Thorne ("Mr. Thorne") is a citizen of the United States, a resident of the State of Michigan, and an honorably discharged army veteran. Mr. Thorne is also acting as Next Friend for his son, Plaintiff S.T.

7. Plaintiff S.T. ("ST") was at all pertinent times a minor and the son of Plaintiff Roy Thorne.

8. Defendant Officer Logan Wieber was at all pertinent times employed by the Wyoming Police Department as a law enforcement officer and was acting under color of state law within the course and scope of his employment and in accordance and conformity with Wyoming's policies, procedures, protocols, and customs, and as trained by Wyoming.

9. Defendant Officer Lee Atkinson was at all pertinent times employed by the Wyoming Police Department as a law enforcement officer and was acting under color of state law within the course and scope of his employment and in accordance and conformity with Wyoming's policies, procedures, protocols, and customs, and as trained by Wyoming.

10. Defendant Officer Devin Quintard was at all pertinent times employed by the Wyoming Police Department as a law enforcement officer and was acting under color of state law within the course and scope of his employment and in accordance and conformity with Wyoming's policies, procedures, protocols, and customs, and as trained by Wyoming.

11. Defendant Officer Arrow Kotarak was at all pertinent times employed by the Wyoming Police Department as a law enforcement officer and was acting under color of state law within the course and scope of his employment and in

accordance and conformity with Wyoming's policies, procedures, protocols, and customs, and as trained by Wyoming.

12. Defendant Officer Zachery Johnson was at all pertinent times employed by the Wyoming Police Department as a law enforcement officer and was acting under color of state law within the course and scope of his employment and in accordance and conformity with Wyoming's policies, procedures, protocols, and customs, and as trained by Wyoming.

13. Defendant Sergeant Brian Look was at all pertinent times employed by the Wyoming Police Department as a law enforcement officer and was acting under color of state law within the course and scope of his employment and in accordance and conformity with Wyoming's policies, procedures, protocols, and customs, and as trained by Wyoming.

14. Defendant, Chief Kimberly Koster, is the highest-ranking supervisor for all other individually named defendant officers. She is also a decisionmaker and policymaker, for *Monell* purposes, for the City of Wyoming for all matters related to law enforcement policies, procedures, protocols, and customs, enacted through its police department, IE the Wyoming Police Department. Defendant Koster is being sued in her official capacity for *Monell* purposes, and in her individual and supervisory capacities. At all pertinent times, Defendant Koster was acting in her capacity as a law enforcement officer, police chief, Wyoming policymaker,

Wyoming decisionmaker, and within her duties and obligations of her employment as such.

15. Defendant City of Wyoming ("Wyoming") is a political subdivision of the State of Michigan. Defendant Wyoming at all pertinent times had the legal duty to enact and enforce policies, procedures, protocols, and customs that conform with the Constitution of the State of Michigan, the Constitution of the United States, and the laws of both the United States and Michigan.

16. All individually named defendants are being sued in their individual and official capacities.

## STATEMENT OF FACTS

17. On August 1, 2021, at around 2:10 PM, Mr. Brown, a licensed realtor, was showing a home at 2417 Sharon Ave SW to Mr. Thorne and S.T.

18. While the plaintiffs were inside the home, a neighbor had called 911 and advised dispatch that an alleged squatter, a young black man, who had been arrested on July 24, 2021, had returned to 2417 Sharon Ave SW ("subject home") with his black Mercedes.

19. According to Wyoming Police Department, this "alleged squatter" was actually an individual who was "interested in buying the house" but had entered without permission.

20. The dispatcher then dispatched the call to the police officers to make the scene.

21. A defendant officer allegedly called the 911 caller and claims to have received confirmation from the caller that it was in fact the same suspect as before and the same black Mercedes, that two additional people had arrived at the subject home, and that all three were currently inside the subject home. This defendant officer then radioed to treat the call as a "B and E" or breaking and entering.

22. At around 2:24 PM, one defendant officer arrived at the subject home and advised Dispatch of the two vehicles' license plates to be run through the Law Enforcement Information Network ("LEIN") and advised that one vehicle was a Chevy Malibu, and one was a Genesis; neither of these vehicles were a Mercedes, so the defendant knew before ever even making contact with the plaintiffs that they were not the alleged squatter from the previous week, who had been driving a black Mercedes.

23. The LEIN search would have very easily established for the defendants that the two vehicles were not registered by the alleged squatter.

24. Despite this knowledge, the responding defendant officers, who arrived at the subject home, ordered all three plaintiffs out of the home at gun point and handcuffed them. The orders started at around 2:26 PM and continued until all three plaintiffs were handcuffed in police custody at around 2:30 PM.

25. As Mr. Thorne was first detained and handcuffed, he told the officers that the other man was a realtor who was showing them the house. Defendant Officers still proceeded to handcuff Mr. Thorne, ST, and Mr. Brown.

26. As Mr. Brown was detained and handcuffed, he explained to the officers that he was a realtor with permission to be at the home. After he proved he was a realtor, he was released from the officers' custody.

27. Concerningly, when Officer Jackson handcuffed S.T., he advised S.T. that this was likely just a "big misunderstanding." This demonstrates that Officer Jackson knew before he even handcuffed S.T, a minor, that there was no reasonable suspicion that S.T. had violated any law. Despite this knowledge, Officer Jackson still handcuffed S.T., searched him, and detained him in the back of a police vehicle.

28. Moments later, S.T. was released, but the fact remains that S.T. was detained at gun point, handcuffed, and searched by the defendant officers.

29. Most of the officers turned off their body cameras before discussing the situation with the other officers on scene. However, one officer left his body camera running to record another officer explaining what happened to justify their actions. The speaking officer falsely claimed that he could not see the license plate of the vehicle, otherwise he would have known it was not the squatter. However, the license plate is clearly visible on multiple body cameras and could have easily been identified simply by looking at it. This claim that he could not see the license plate

is quite simply false. This officer further explained that it was "the exact same car" as the squatter – this too is false. The squatter was driving a Mercedes; the plaintiff's vehicle was a Genesis and it had markings on it clearly identifying it as a Genesis. Immediately after this excuse is made on the body camera, the body camera is turned off. Even more problematic for this officer's tale, is the fact that the first officer who arrived on scene clearly radioed that the vehicles were a Genesis and a Malibu and radioed both vehicles' license plates. Not only does this prove unequivocally that the makes of the vehicles and the plates were clearly visible, but that LEIN had already been run and the officer knew the people in the home did not include the alleged squatter.

30. After the plaintiffs were released, one of the officers walked in between the plaintiffs' two cars, directly behind the Genesis, and the license plate is easily discernible as is the fact that it is a Genesis and not a Mercedes.

31. The Plaintiffs are all African American men.

32. Had the Plaintiffs not been African American men, they would not have been held at gun point, would not have been detained, and would not have been handcuffed.

33. The only factor corroborated by the Defendants in their alleged investigation was the Plaintiffs' race and gender. Neither Plaintiffs nor Plaintiffs' cars matched the description of the alleged squatter. Further, prior to detaining

Plaintiffs, the defendants knew the Plaintiffs' cars and license plates did not match the individual previously arrested, yet continued to detain and handcuff Plaintiffs anyway, including a minor, based solely on their race.

34. A person cannot become the target of a police investigation solely on the basis of skin color.

35. Defendant Officers have not detained a white or other non-black realtor and his clients at gun point for merely showing a house with a pre-made and approved appointment.

36. Plaintiffs violated no laws and committed no crimes at any point before or after they were detained at gunpoint and handcuffed by Defendant Officers.

37. Defendants' complained-of actions were done intentionally, purposely, purposefully, knowingly, recklessly, wantonly, maliciously, sadistically, deliberately, and with deliberate indifference and gross negligence.

38. Plaintiffs suffered and continue to suffer harm as a result.

### *Monell* Liability against Defendant Wyoming: Failure to Train/Supervise; and as an alternative *Monell* theory of liability: Policy, Custom, and/or Practice

39. Defendant Wyoming has a policy, practice, procedure, protocol, and/or custom that demonstrates deliberate indifference to the rights of the plaintiffs and those similarly situated, and directly caused the harm suffered by the plaintiffs in this action.

40. These unlawful policies, procedures, protocols, and customs include to:

   a. Detain people at gunpoint without a lawful basis to do so;

   b. Detain people in handcuffs without a lawful basis to do so;

   c. Detain minors in handcuffs at gunpoint and search them without a lawful basis to do so;

   d. Treat African American suspects with a presumption of guilt;

   e. Detain African American suspects at gunpoint and in handcuffs, despite it being unnecessary, in circumstances in which white suspects would not be held at gunpoint or in handcuffs;

   f. Fail to train and supervise law enforcement officers to follow the laws of the United States and the Constitution of the United States;

   g. Fail to discipline law enforcement officers when they violate the rights of those with whom they interact, thereby approving of and encouraging such misconduct;

   h. Fail to meaningfully investigate allegations of misconduct by law enforcement officers, thereby approving of and encouraging such misconduct;

41. Defendant Wyoming has ratified the constitutional violations committed by Defendant Officers as described herein. Defendant Wyoming, through its supervisors and policymakers, reviewed this incident and determined the

defendant officers complied with Defendant Wyoming's policies, practices, and customs on the use of force and Fourth Amendment seizures.

42. Defendant Wyoming's herein complained of unconstitutional policies, procedures, protocols, and customs, are directly responsible for the herein complained of Constitutional violations and the plaintiffs' harm.

**COUNT I**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourth Amendment – Unlawful Detainment and Excessive Force)**
*(All Plaintiffs vs All Defendants)*

43. Plaintiffs incorporate herein all the prior allegations.

44. The defendants detained and handcuffed the plaintiffs despite there being no reasonable suspicion that any plaintiff had been involved in any criminal activity.

45. Additionally, the plaintiffs were held and detained at gunpoint, which was far more force than reasonably necessary to effectuate a detainment. The plaintiffs could have been detained without the use of so many firearms being pointed at them, without the use of handcuffs, and without being placed in a squad car.

46. None of the Plaintiffs were threatening, violent, armed, or dangerous and the Defendants had no information to the contrary.

47. All individual defendants either participated in these unlawful acts or had both the opportunity and ability and intervene but chose not to. Defendant Koster

and all other on-scene supervisors at least implicitly authorized, approved, or acquiesced in the unconstitutional conduct of their subordinates.

48.  The named defendants who did not actively participate in the unconstitutional conduct, failed to intervene to put an immediate stop to it.

49.  As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiffs suffered harm.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Equal Protection Claim)**
*(All Plaintiffs vs All Defendants)*

50.  Plaintiffs incorporate herein all the prior allegations.

51.  At all times relevant, Plaintiffs had a clearly established right to be free from arbitrary discrimination and discrimination based on race pursuant to the Fourteenth Amendment to the United States Constitution.

52.  At all times relevant, Plaintiffs had a clearly established right to be free from discrimination and differential treatment based on their race, pursuant to the Fourteenth Amendment to the United States Constitution.

53.  At all times relevant herein, Defendants were acting under the color of law and were required to obey the laws of the United States.

54.  Defendant Officers detained the plaintiffs at gunpoint and in handcuffs with no lawful basis to do so and only on the basis of race.

55. Defendant Officers detained the plaintiffs at gunpoint and in handcuffs only because they are African-American.

56. Defendant Officers would not have detained the plaintiffs at gunpoint, nor would the defendant officers have handcuffed the plaintiffs, had the plaintiffs been Caucasian.

57. Defendant Officers acted with intent and knowledge to cause harm to Plaintiffs specifically because of the Plaintiffs' race or skin color, and specifically because they were not Caucasian.

58. Defendant Officers' actions and inactions constitute impermissible differential treatment based on the impermissible classification of race in violation of 42 U.S.C § 1983 and the Fourteenth Amendment to the United States Constitution.

59. Plaintiffs suffered harm as a result.

### COUNT III
### STATE CAUSE OF ACITON
### (Assault and Battery)
*(All Plaintiffs vs All Defendants)*

60. Plaintiffs incorporate herein all the prior allegations.

61. Defendants pointed firearms at the plaintiffs, thereby engaging in an intentional, unlawful threat to do bodily harm to the plaintiffs under circumstances which created in the plaintiffs a well-founded fear of imminent peril.

62. Further, the defendants handcuffed the plaintiffs thereby engaging in the willful or intentional touching of the plaintiffs against the plaintiffs' will.

63. Plaintiffs suffered harm as a result.

## COUNT IV
## STATE CAUSE OF ACTION
## (False Imprisonment)
*(All Plaintiffs vs All Defendants)*

64. Plaintiff incorporates herein all the prior allegations.

65. Defendants engaged in the unlawful restraint of the plaintiffs' liberty and freedom of movement by detaining them at gunpoint and then handcuffing them.

66. Defendants thereby engaged in such restraint with both express and implied physical force, and caused the plaintiffs to suffer harm as a result.

## COUNT V
## STATE CAUSE OF ACTION
## (Intentional Infliction of Emotional Distress)
*(All Plaintiffs vs All Defendants)*

67. Plaintiffs incorporate herein all the prior allegations.

68. The defendants' conduct as described herein was intentional and reckless and was also extreme and outrageous, which caused the plaintiffs to suffer harm in the form of severe emotional distress.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

a. Full and fair compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Reasonable attorney's fees and costs of this action;

d. Any such other relief as appears just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all triable issues, per Fed. R. Civ. P. 38(b).

Respectfully Submitted,

JOHNSON LAW, PLLC

*/s/ Ven R. Johnson*
Ven R. Johnson (P39219)
Solomon M. Rander (P73653)
Madeline M. Sinkovich (P82846)
Attorneys for Plaintiff
535 Griswold, Suite 2600
Detroit, MI 48226
(313) 324-8300
vjohnson@venjohnsonlaw.com
sradner@venjohnsonlaw.com
msinkovich@venjohnsonlaw.com

Dated: _____